IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 98-10859
Summary Calendar
_____


In The Matter Of:  DICKIE WAYNE CLEMENT,

Debtor.
_____

DICKIE WAYNE CLEMENT,

Appellant,

versus

FIRST NATIONAL BANK OF BOWIE,

Appellee.
_____

Appeal from the United States District Court
for the Northern District of Texas
(4:98-CV-224-Y)
_____

December 14, 1998

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Dickie Wayne Clement, a debtor in the bankruptcy proceedings underlying this appeal, challenges the bankruptcy court's order overruling his objection to a proof of claim filed by First National Bank of Bowie (the "Bank").  The district court affirmed the order.  We conclude that the bankruptcy court properly allowed the claim.  Therefore, we affirm the district court's judgment.

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Before discussing the bankruptcy proceedings, we recap some of the events leading up to those proceedings. The relevant facts are not in dispute.

In 1992, the Bank obtained a judgment, in state court, against Clement in the amount of $73,283.23. The day the court issued the judgment, the Bank recorded the abstract of judgment in the Official Public Records of Real Property of Wise County, Texas. The Bank was not the only party to act swiftly upon issuing of the judgment. Also on the same day, Clement's attorney recorded a deed conveying Clement's real property to a friend of Clement. The Bank, however, successfully petitioned a Texas district court to label the conveyance as fraudulent and set it aside. Soon thereafter, the local sheriff conducted an execution sale to satisfy the Bank's judgment.

At this sale, which occurred in 1995, the Bank purchased one of Clement's tracts of land for $58,400. The Bank credited this amount against the judgment award owed by Clement. A little over one month after purchasing the property, the Bank resold the property for $116,067.40. Meanwhile, to satisfy what it perceived as a remaining deficiency in the judgment, the Bank set another one of Clement's tracts of land for execution sale.[1] Before the

---

[1] A Texas district court judgment, entered on May 22, 1995, stated that the Bank could foreclose its judgment lien on the two tracts of land.

sheriff could carry out this execution sale, however, Clement filed a petition for bankruptcy under Chapter 13 of the Bankruptcy Code, which had the effect of staying the execution sale.[2]  See 11 U.S.C.A. § 362 (West Supp. 1998).

During the bankruptcy proceedings, the Bank filed a proof of claim for $47,331.23.  See 11 U.S.C.A. § 501 (West 1993).  Clement objected to this claim under 11 U.S.C.A. § 502(b)(1).[3]  The bankruptcy court issued an order overruling the objection.  The district court subsequently affirmed the bankruptcy court's order.

---

[2]The bankruptcy filing also had the effect of staying other pending litigation in the state court.

[3]The relevant language of § 502(b)(1) provides:

(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that–

(1) such claim is unenforceable against the debtor and property of the debtor, under any . . . applicable law for a reason other than because such claim is contingent or unmatured.

3

II

A

"We review the decision of the district court by applying the same standard[] of review to the bankruptcy court's . . . conclusions of law as applied by the district court." Crowell v. Theodore Bender Accounting, Inc., 138 F.3d 1031, 1033 (5th Cir. 1998) (citations omitted). The bankruptcy court's conclusions of law are reviewed *de novo*. Id. The parties have not brought before us any relevant factual disputes.

B

Clement argues that the Bank's claim is unenforceable under Texas law. Although admitting that the actual sale price at the execution sale left a deficiency, Clement argues that this sale of his land has satisfied the judgment in full. This is so, he argues, because the Bank, which bought the land at the execution sale, turned around and resold the land, just one month later, for $116,067.40—an amount far greater than the judgment award. Clement urges us to recognize that, in this case, Texas law requires that "persons against whom recovery of [a] deficiency is sought are entitled to an offset against the deficiency in the amount by which the fair market value . . . exceeds the sale price." TEX. PROP. CODE ANN. § 51.003(C) (WEST 1995); see also id. § 51.004(c).

The Bank, however, contends that fair market value plays no role in computing the deficiency that remains after an execution sale. Chapter 51 of the Texas Property Code, the Bank points out, only applies to foreclosure sales of property subject to a trust or other contract lien. See id. § 51.004(a)(1) ("This section applies if real property subject to a deed of trust or other contract lien is sold at a foreclosure sale . . ."); id. § 51.003 (referencing to § 51.002, which provides the procedure for conducting a sale of real property under contract lien). In this case, the sheriff conducted a foreclosure sale of property subject to a judgment lien, not a deed of trust or any other contract lien. The Bank argues that Chapter 51, therefore, does not apply to this case. According to the Bank's interpretation of Texas' common law, Clement can only challenge the sheriff's sale by showing (1) that the price paid for the property was grossly inadequate, and (2) that there were irregularities in the sale. Clement, however, has stipulated that there were no irregularities in the sheriff's execution sale. We are thus left with the simple question of whether Chapter 51 applies to this execution sale.

III

We agree with the Bank's straightforward reading of Chapter 51. Chapter 51 limits itself to foreclosure sales of property subject to a deed of trust or other contract lien. Id. §§ 51.002, 51.004. The property involved in this case was subject to a judgment lien. The creation of a judgment lien is governed by

5

Chapter 52 of the Texas Property Code. See TEX. PROP. CODE ANN. § 52.001 (West 1995). Section 51.001 specifically provides that "this subtitle does not affect a lien that is not treated in this subtitle, including a lien arising under common law, in equity or under another statute of this state." As Chapter 52 governs judgment liens, and judgment liens are not treated in the provisions of Chapter 51, the code provisions that Clement relies upon do not provide any support for his argument. A plain reading of the Texas code prompts this conclusion. It is not surprising, therefore, that Clement has not directed us to any Texas cases that apply the provisions of Chapter 51 to judgment liens. Because Clement bases his sole objection to the Bank's claim on the provisions of Chapter 51, the bankruptcy court properly overruled his objection.[4]

The judgment of the district court is

---

[4]Clement also offers a policy reason for expanding the application of Chapter 51 to judgment liens. Clement contends that by restricting the application of Chapter 51 to its textually defined limits, our court would create a loophole for creditors wishing to deny hypothecators their protections provided by Chapter 51. Instead of foreclosing on the property subject to a contract lien, Clement suggests, a creditor could sue on the defaulted note and obtain a judgment. When the creditor forces an execution sale producing proceeds less than the fair market value of the property sold, the creditor could claim that Chapter 51 does not apply. This sale of property would be the result of an execution sale, not a sale "under power of sale conferred by a deed of trust or other contract lien." Id. § 51.002(a). If Texas' Property Code allows for the nefarious evasions that Clement thinks it does, only the Texas courts or legislature, not the federal courts, have the power to close the alleged loophole.

A F F I R M E D.